# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5454 | **DATE** | 11/1/2004 |
| **CASE TITLE** | Joseph E. Cohen vs. Ric Lewis, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendants Nvidia Corporation and Hilton Sessel's motions to dismiss counts XXIII and XXVI of the second amended complaint [90-1], [91-1] are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | 4 | | Document Number |
|---|---|---|---|---|---|---|---|
| | No notices required. | | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | | | |
| | Notified counsel by telephone. | | | | NOV 3 - 2004 | | |
| | Docketing to mail notices. | | | | date docketed | | |
| | Mail AO 450 form. | | | | docketing deputy initials | | 130 |
| | Copy to judge/magistrate judge. | | | | 11/1/2004 | | |
| | | | | | date mailed notice | | |
| IS | courtroom deputy's initials | | | | IS | | |
| | | | | | mailing deputy initials | | |

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| JOSEPH E. COHEN, Trustee for the Estate of VisionTek, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 03 C 5454 |
| RIC LEWIS, ROBERT SHANE VANCE, SCOTT A. HERKELMAN, JOHN R. MALLEY, JOHN F. HALL, BFG TECHNOLOGIES, INC., ADVANCED EQUITIES, INC., KEITH G. DAUBENSPECK, DWIGHT O. BADGER, CHRISTOPHER R. PRAVECEK, JOHN SLEVIN, JOHN VOSICKY, NVIDIA CORPORATION, HILTON SESSEL, MITAC INTERNATIONAL CORP., and BARBARA LEWIS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Magistrate Judge Martin C. Ashman |
| Defendants. | ) ) | |

DOCKETED
NOV 8 - 2004

## MEMORANDUM OPINION AND ORDER

Before the court are the motions of defendants Nvidia Corporation ("Nvidia") and

Hilton Sessel ("Sessel") to dismiss Counts XXIII and XXVI of the Second Amended

Complaint of plaintiff Joseph E. Cohen, Trustee for the Estate of VisionTek, LLC. For

the following reasons, the court denies both defendants' motions to dismiss those counts.

/30

# I.  **Background**

Prior to its Chapter VII bankruptcy proceedings[1], VisionTek manufactured and sold microelectronic modules – called "cards" – for the enhancement of graphics in computer games and personal computers.  In August of 2002, several VisionTek employees left to either form, or work for, a new company, BFG Technologies, Inc. ("BFG").  The Trustee's Second Amended Complaint ("Complaint") is a seventy-page, twenty-seven-count filing that characterizes that exodus as a conspiracy to misappropriate VisionTek's trade secrets and confidential information; solicit its employees, suppliers, and customers; and form a new company to compete with VisionTek and run it out of business.  The Trustee has named the former employees in counts charging breaches of their non-competition agreements and confidentiality agreements.

Defendant Nvidia Corporation ("Nvidia") manufactures hardware and software components of graphics cards and was a key supplier to VisionTek.  Defendant Hilton Sessel ("Sessel") was Nvidia's director of sales during the relevant period.  According to the Trustee, Nvidia and Sessel were essential participants in the conspiracy: if Sessel had not agreed to terminate Nvidia's relationship with VisionTek and do business with the new company, BFG, the former VisionTek employees would not have carried out their plan.  Thus, in Count XXIII, the Trustee alleges that Nvidia and Sessel committed

---

[1] The counts at issue here are non-core, adversary proceedings related to the Chapter VII bankruptcy case of *In the Matter of VisionTek*, No. 02 B 47006. (*Second Amended Complaint*, ¶ 3c).

tortious interference with the contractual relationships VisionTek had with its soon-to-be-former employees. In addition, the Trustee claims that Nvidia and Sessel falsely indicated to BFG and others that the purchase of VisionTek inventory would subject them to liability. Under Count XXVI, the Trustee contends that this constituted tortious interference with prospective economic advantage. Nvidia and Sessel move to dismiss these counts, arguing that the Trustee has improperly embroiled them in a dispute between VisionTek and its former employees.

## A.    Trustee's Allegations

For the purposes of considering the defendants' motions to dismiss, the court accepts all of the Trustee's well-pleaded allegations as true, and draw all reasonable inferences in the Trustee's favor. *Bressner v. Ambroziak*, 379 F.3d 478, 480 (7th Cir. 2004). Founded in 1988, VisionTek, as already noted, manufactured and distributed computer graphics cards for use in computer games and home computers. (*Complaint*, ¶ 23). As a participant in the highly competitive consumer electronics industry, VisionTek was understandably concerned with maintaining the confidentiality of its trade secrets and its design, development, and manufacturing methods. (*Id.*, ¶¶ 24-25). To that end, the contracts it executed with its employees included confidentiality and non-competition agreements. (*Id.*, ¶¶ 30-33, 36-38, 40, 42-44, 46-49).

In 2002, VisionTek began discussions with Advanced Equities, Inc. ("AEI") regarding efforts to raise capital. (*Id.*, ¶ 57). The parties entered into a non-disclosure agreement to protect any confidential information that might be exchanged during the course of their discussions. (*Id.*, ¶ 58). By July of 2002, discussions had progressed to a point where the parties had raised the possibility of AEI purchasing some or all of VisionTek's outstanding shares, and AEI conducted a due diligence examination of VisionTek. (*Id.*, ¶ 60-61). On August 5, 2002, three VisionTek representatives – Ric Lewis, Robert Vance, and Scott Herkelman – met with AEI representatives – Keith Daubenspek, Dwight Badger, Christopher Pravecek, John Slevin, and John Vosicky – to negotiate AEI's purchase of VisionTek. (*Id.*, ¶ 64). In these negotiations, the VisionTek representatives sought to secure positions and ownership interests in the successor company for themselves, but their demands were rejected. (*Id.*, ¶ 64).

Meanwhile, according to the Trustee, its employees were fomenting a mutiny. The Trustee alleges that these same eight individuals, and perhaps others, were engaging in clandestine discussions in which they agreed upon a plan to derail the AEI-VisionTek negotiations and create a new company that would include many of VisionTek's employees. (*Id.*, ¶ 65). During these discussions, these individuals "reviewed and utilized [VisionTek's] confidential information," which they had accumulated during the employees' tenures with VisionTek or during the AEI-VisionTek negotiations, in order to analyze and evaluate the feasibility of creating a new company. (*Id.*, ¶ 66). Pursuant to

their plan, the new company would solicit VisionTek's employees, customers, and

suppliers, taking over VisionTek's business and eventually driving it from the market.

(*Id.*, ¶ 67). In order for the scheme to succeed, however, the mutinying VisionTek

employees would have to solicit and convince certain key suppliers to cooperate by

severing their business relationships with VisionTek in favor of the newly formed

company. (*Id.*, ¶¶ 68, 88).

Enter Nvidia – one of those key suppliers – and its director of sales, Sessler. The

Trustee claims that, through Sessler, Nvidia agreed to cooperate with the scheme, support

the new company, and cease doing business with VisionTek. (*Id.*, ¶ 70). According to

the Trustee, this was of vital importance to the success of the plan: it could not succeed

without Nvidia's participation. (*Id.*, ¶ 70). In addition, the Trustee claims that Sessel

also:

> advise[d] one or more individuals and/or entities with which [VisionTek]
> was conducting, or had an expectation of conducting, business, that
> [VisionTek] did not have the legal right to sell [VisionTek's] inventory.
> Nvidia, through Sessel, threatened to hold such individuals and/or entities
> liable should they do business with [VisionTek].

(*Id.*, ¶ 71).

On August 14, 2002, the three VisionTek employees involved in the original

discussions with AEI – Lewis, Vance, and Herkelman – abruptly resigned from

VisionTek, but not before pirating away certain confidential files and business plans.

(*Id.*, ¶ 75, 80, 82-83). According to the Trustee, on that same day, August 14:

> reservations were made for Lewis, Vance, Herkelman and Slevin to travel to Atlanta to meet with Sessel of Nvidia. Upon information and belief, the purpose of this meeting was to discuss the plan of Slevin, Vosicky, Daubenspek, Badger, Pravecek, [AEI], Lewis, Vance, Herkelman, and possibly others, to form their own company to compete with, and destroy, [VisionTek], and to confirm Nvidia as a supplier to the new company.

(*Id.*, ¶ 78). By August 23, 2002, the three VisionTek mutineers solicited some additional employees – among them, John Malley and John Hall, now defendants in this lawsuit – to leave VisionTek as well. (*Id.*, ¶ 85-86). On August 27, 2002, the new company, BFG, was incorporated. (*Id.*, ¶ 84). Thereafter, according to the Trustee:

> Lewis, Vance, Herkelman, Malley, Hall, Slevin, Vosicky, Daubenspek, Badger, Pravecek, and AEI . . . solicited suppliers of [VisionTek] to stop doing business with [VisionTek] and to do business with BFG. The suppliers that were solicited included: . . . Nvidia . . .

(*Id.*, ¶ 88).

As already noted, the Trustee names Nvidia and Sessel in two of his Complaint's twenty-seven counts. In Count XXIII, the Trustee alleges that Nvidia and Sessel are liable for tortious interference with contractual relationships. According to the Trustee, the two defendants were aware of the various confidentiality and non-competition agreements VisionTek had with the employees that left it to form and work for BFG. (*Id.*, ¶¶ 91-92). The Trustee claims that, nevertheless, Nvidia and Sessel intentionally, and without justification, induced those employees to breach those agreements. (*Id.*, ¶ 93). In

Count XXVI, the Trustee alleges that VisionTek "had a reasonable expectation of entering into a valid business relationship with"-- oddly enough – the newly formed "BFG and others relating to the purchase of certain of [VisionTek's] inventory." (*Id.*, ¶ 91). The Trustee further alleges that Nvidia and Sessel had knowledge of this expectation, and intentionally and unjustifiedly interfered with it by falsely stating that purchase of VisionTek's inventory would subject "BFG and others to liability." (*Id.*, ¶ 92-93). According to the Trustee, such actions were "intentional, malicious, and without legal justification" and "served no legitimate business purpose." (*Id.*, ¶ 94).

### B.     Defendants' Arguments

Nvidia and Sessel move to dismiss both counts. The two defendants argue that Count XXIII fails to state a claim for tortious interference with contractual relationships because the Complaint alleges that VisionTek's employees solicited Nvidia to do business with BFG, as opposed Nvidia or Sessel inducing any VisionTek employees to breach their contracts. According to Nvidia and Sessel, the Trustee complains of nothing more than Nvidia ending one business relationship with VisionTek, and commencing another with BFG. As for Count XXVI, Nvidia and Sessel question how the Trustee can allege that VisionTek had a legitimate expectation of doing business with BFG, which was established by and composed of the individuals the Trustee claims set out to destroy VisionTek. The two defendants also contend that the Complaint fails to allege that any

statements they made about their own legal rights were asserted in bad faith. Beyond that, Nvidia and Sessel find fault with the Complaint's demand for punitive damages. Finally, Sessel argues that the court cannot exercise personal jurisdiction over him without violating his Fifth Amendment rights.

## II.  Analysis

The standards for pleading under the Federal Rules of Civil Procedure are liberal: "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998 (2002) ( *quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). "All that's required to state a claim in a complaint filed in a federal court is a short statement, in plain (that is, ordinary, nonlegalistic) English, of the legal claim." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999).

By the same token, however, a plaintiff can plead too much. If a plaintiff chooses to provide additional facts, beyond the short and plain statement requirement, the plaintiff cannot prevent the defense from suggesting that those same facts demonstrate the plaintiff is not entitled to relief. *Thompson v. Illinois Dept. of Professional Regulation,* 300 F.3d

750, 753 (7th Cir. 2002). In such a case, the plaintiff "is out of luck – he has pleaded himself out of court." *Thomas v. Farley,* 31 F.3d 557, 558-59 (7th Cir. 1994). With these standards in mind, the court evaluates the Trustee's allegations in light of the two defendants' arguments for dismissal.

### A.     Tortious Interference with Contractual Relations

In Count XXIII of the Complaint, the Trustee alleges that Sessel and Nvidia tortiously interfered with the contracts VisionTek had with the employees who left to form BFG. Under Illinois law, the elements of a claim for tortious interference with contractual relations are: (1) a valid and enforceable contract; (2) defendants' awareness of the contractual obligation; (3) defendants' intentional and unjustified inducement of the breach of that contractual obligation; (4) subsequent breach caused by defendants' unlawful conduct; and (5) resultant damages. *Burrell v. City of Mattoon,* 378 F.3d 642, 651-52 (7th Cir. 2004); *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 154-55, 545 N.E.2d 672, 676 (1989). Nvidia and Sessel contend that the Trustee has failed to allege that the two defendants intentionally and unjustifiably induced a breach of contract and caused a subsequent breach. (*Memorandum in Support of Nvidia's Motion to Dismiss,* at 6-8; *Memorandum in Support of Sessel's Motion to Dismiss*, at 6-9). Instead, according to Nvidia and Sessel, the Trustee's allegations demonstrate that VisionTek employees approached Nvidia and Sessel in an effort to

encourage them to do business with the soon-to-be-formed BFG to the exclusion of VisionTek. As Nvidia and Sessel characterize the Complaint, it merely alleges that the two defendants chose to start doing business with BFG, and stop doing business with VisionTek. (*Memorandum in Support of Nvidia's Motion to Dismiss*, at 9-10; *Memorandum in Support of Sessel's Motion to Dismiss*, at 9-10). That, the two defendants argue, cannot amount to a tort.

A defendant's intentional and unjustified inducement of a breach of contract, as Nvidia and Sessel argue, is a necessary prerequisite to the maintenance of an action for tortious interference with contract is. *Strosberg v. Brauvin Realty Services, Inc.*, 295 Ill.App.3d 17, 33, 691 N.E.2d 834, 845 (1st Dist. 1998). In the context of a claim for tortious interference with a contract, "inducement" means "some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way." *In re Estate of Albergo*, 275 Ill.App.3d 439, 446, 656 N.E.2d 97, 103 (2nd Dist. 1995) (citations omitted). According to the Trustee, the complaint adequately states that Nvidia and Sessel actively persuaded, encouraged, or incited the VisionTek employees to breach their contacts in several passages:

> As alleged in the Complaint, the Nvidia Defendants influenced VisionTek's contract employees to breach their contracts with VisionTek, meeting with several of them to plot the scheme before the employees left VisionTek (Cmplt. ¶¶ 70, 71, 78). During these meetings, the Nvidia Defendants and their co-defendants planned and carried out the misappropriation of VisionTek's trade secrets and the disclosure of its confidential information in violation of various confidentiality agreements (Cmplt. ¶¶ 70, 71, 78). They also planned to create co-defendant, BFG, and to involve VisionTek's

- 10 -

employees in direct violation of their non-competition agreements with VisionTek (Cmplt. ¶¶ 70, 71, 78).

(*Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss*, at 8). Such allegations might arguably withstand a motion to dismiss if they appeared in the Complaint, but the Trustee's characterization of the Complaint's allegations suggests an unfamiliarity with them. In the three paragraphs cited, the Trustee claims that Nvidia and Sessel met with the mutineers and their AEI cohorts and agreed to cooperate with an already-formulated scheme (*Complaint*, ¶ 70); that Nvidia, through Sessel, questioned the legality of VisionTek's sale of its inventory (*Id.*, ¶ 71), and that, on the day the mutineers resigned, they made arrangements to meet with Sessel to confirm Nvidia as a supplier for BFG. (*Id.*, ¶ 78). There are no allegations anywhere in the complaint, let alone in the sections cited in the Trustee's brief, that Nvidia and Sessel engaged in the plotting of the VisionTek employees' scheme, spirited away any of VisionTek's trade secrets or confidential information, or took part in the creation of BFG.

Instead, the Complaint is rather clear in its assertion that the plan, plot, or scheme was formulated among Lewis, Vance, Herkelman, Daubenspek, Badger, Pravecek, Slevin, and Vosicky, before any involvement or awareness on the parts of Nvidia and Sessel. (*Id.*, ¶¶ 65-69). In more than one instance in the Complaint, the Trustee alleges that it was the VisionTek employees who solicited Nvidia and Sessel to participate in their scheme (*Id.*, ¶¶ 68, 70, 78, 88), implying that all was in place before the two defendants were contacted. In fact, the Trustee's allegations suggest that Lewis, Vance,

- 11 -

Herkelman were, arguably, already in breach of at least their confidentiality agreements –

before they had any contact with Nvidia or Sessel – based on their use of confidential

information in their discussions with Daubenspek, Badger, Pravecek, Slevin, and

Vosicky. (*Id.*, ¶ 66). Many of the Trustee's allegations, then, tend to undermine his

purported cause of action against Nvidia and Sessel. But, because of the Federal Rules'

liberal pleading standards, the court cannot dismiss Count XXIII.

The Trustee did, at least, plead the elements of a claim for tortious interference

with contract in Count XXIII of his Complaint. There, he claimed that the VisionTek

employees were under contract, that Nvidia and Sessel were aware of this, and that they,

nevertheless, intentionally and unjustifiably induced the VisionTek employees to breach

their contracts. (*Complaint*, ¶¶ 91-93). The Trustee also alleges that the breaches were

caused by the two defendants, and that those breaches resulted in damages to VisionTek.

(*Id.*, ¶ 94-95). Such allegations are adequate to meet the federal pleading requirements.

While the court agrees with Nvidia and Sessel that many of the Trustee's other allegations

cast doubt on his cause of action, the court cannot rule that the Trustee has "pleaded

himself out of court."

In addition to those allegations that seem to undermine the Trustee's claim, the

Complaint also states that the two defendants were an integral part of the VisionTek

employees' plan and that the plan was contingent on their participation. The Trustee may

be able to prove that Nvidia and Sessel actively encouraged or persuaded the VisionTek

employees' to follow through with their plan in a manner that goes beyond being the passive target of the VisionTek employee's solicitations. He may be able to prove that the two defendants' participation exceeded a mere business decision to stop supplying one company and start supplying another. As such, the Trustee may be able to prove facts consistent with the Complaint's allegations that demonstrate he is entitled to relief.[2] While the Trustee's allegations make it appear remote that he will succeed, the court cannot foreclose that possibility in ruling on a motion to dismiss. *Swierkiewicz*, 534 U.S. at 515, 122 S.Ct. at 999. Consequently, the two defendants' motions to dismiss Count XXIII are denied.

## B. Tortious Interference with Prospective Economic Advantage

In Count XXVI, the Trustee brings a claim for tortious interference with prospective economic advantage. Under Illinois law, the elements of a cause of action for

---

[2] In this regard, the court notes that much of the two defendants' support for their arguments in favor of dismissal (*Memorandum in Support of Nvidia's Motion to Dismiss*, at 7; *Memorandum in Support of Sessel's Motion to Dismiss*, at 7) is drawn from cases discussing the requirements of *proving* a claim for tortious interference. *See, e.g., In re Estate of Albergo*, 275 Ill.App.3d at 446, 656 N.E.2d at 103 (summary judgment); *Sullivan's Wholesale Drug Co., Inc. v. Faryl's Pharmacy, Inc.*, 214 Ill.App.3d 1073, 1080, 573 N.E.2d 1370, 1374 (5th Dist. 1991) (summary judgment); *In re Douglas Dunhill, Inc.*, 22 B.R. 953, 957 (Bankr. N.D.Ill. 1982) (summary judgment); *Francorp, Inc. v. Siebert*, No. 00 C 1248, 2000 WL 1741918 (N.D.Ill. Nov. 24, 2000) (summary judgment). The Trustee, however, need not respond to the defendants' motions to dismiss with proof of the facts he alleges. It is enough, at this point in the proceedings, that his allegations pass muster under the Federal Rules' liberal pleading standards.

tortious interference with prospective economic advantage are: (1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendants' knowledge of plaintiff's expectancy; (3) purposeful interference by the defendants that prevents the plaintiff's legitimate expectancy from being fulfilled; and (4) damages to the plaintiff resulting from such interference. *Burrell*, 378 F.3d at 652; *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 511, 568 N.E.2d 870, 878 (1991). Nvidia and Sessel argue that the Trustee's allegations belie his claim that VisionTek had a reasonable expectation of doing business with BFG. In addition, the two defendants argue that the Trustee has failed to plead that the two defendants lacked a good faith basis for asserting their legal rights.

According to the Complaint, Nvidia and Sessel interfered with VisionTek's "reasonable expectation of entering into a valid business relationship with BFG and others" by "falsely stating that the purchase of [VisionTek's] inventory would subject BFG and others to liability." (*Complaint*, ¶¶ 91-93). This is a poorly drafted claim that -- if such a thing is possible – borders on being both too vague and too detailed. It is vague because it alleges that Nvidia and Sessel asserted some unspecified legal rights to products that VisionTek hoped to sell. One wonders what these rights were and how they came about. Under the federal pleading standards, however, not much detail is required. While such allegations may be conclusory and rather vague, they need only give the two defendants notice of the Trustee's claims against them. *Muick v. Glenayre Electronics*,

280 F.3d 741, 744 (7th Cir. 2002). Here, the Trustee's allegations are adequate, if barely so, to inform the two defendants that they are charged with interfering with a prospective business advantage by asserting rights to VisionTek's inventory.

On the other hand, the Complaint approaches being overly detailed because, throughout the Complaint, the Trustee alleges that the VisionTek employees who formed BFG were out to destroy VisionTek. They allegedly pirated away stores of valuable confidential information. They cut off VisionTek from its key suppliers. To allege that VisionTek would have a reasonable expectation of doing business with BFG, in the wake of BFG causing its demise, stretches credulity past the brink. As to a reasonable expectation of doing business with BFG, the Trustee has chosen to plead too many particulars. Those particulars tend to "show he has no claim, [that] he is out of luck – [that] he has pleaded himself out of court." *Thomas,* 31 F.3d at 558-59. The only thing saving Count XXVI from dismissal is the allegation that Nvidia and Sessel also falsely asserted their legal rights to VisionTek's inventory to potential customers – albeit unnamed "others"– aside from BFG. (*Complaint,* ¶¶ 71, 91-93). The Trustee's claims regarding those "others" are not doomed by his description of BFG's goal of ruining VisionTek. It may be that the Trustee will be able to prove such customers existed and that Nvidia and Sessel actually did interfere with VisionTek's reasonable expectation of doing business with them. That possibility dictates that the court allow this count to stand.

- 15 -

Nvidia and Sessel also submit that the assertion of legal rights is protected unless the person asserting those rights does so in bad faith. According to the two defendants, the Complaint fails to allege this. Under Illinois law, there must be an allegation of malice to overcome a defendant's privilege to interfere by asserting legal rights. *Ray Dancer, Inc. v. DMC Corp.,* 230 Ill.App.3d 40, 49, 594 N.E.2d 1344, 1350 (2nd Dist. 1992). The facts alleged must show that there was "a desire to harm, which is independent of and unrelated to a desire to protect the acting party's rights and which is not reasonably related to the defense of a recognized property or social interest." *Id.* Here, the Trustee has alleged that Nvidia and Sessel acted "maliciously and without legal justification," and that their actions "served no legitimate business purpose." (*Complaint,* ¶ 94). Beyond that, as previously noted, throughout the Complaint, the Trustee claims that Nvidia and Sessel were participating in a plan that had a goal of running VisionTek out of business. Such allegations are sufficient to allege bad faith on the part of the two defendants.[3] Accordingly, the court must allow Count XXVI to stand.

---

[3] The arguments of Nvidia and Sessel to the contrary (*Memorandum in Support of Nvidia's Motion to Dismiss,* at 12; *Memorandum in Support of Sessel's Motion to Dismiss,* at 12), while based on accurate statements of the law, are, again, supported by cases involving consideration of evidence necessary to prove whether an assertion of legal rights was made in good faith. *See Disher v. Fulgoni,* 161 Ill.App.3d 1, 25, 514 N.E.2d 767, 782 (1st Dist. 1987) (evidentiary hearing on injunctive relief); *Builders Square, Inc. v. Illgross Partners and Co. Ltd.,* No. 94 C 4632, 1995 WL 452985, *6 (N.D.Ill. July 27, 1995) (summary judgment). These proceedings are not yet at the stage where the Trustee must prove his claims, however, and his allegations are adequate to withstand a motion to dismiss.

## C. Punitive Damages

Next, Nvidia and Sessel argue that the Trustee's demand for punitive damages is improper and must be stricken because the Complaint fails to offer specific facts to support a demand for punitive damages. (*Memorandum in Support of Nvidia's Motion to Dismiss*, at 14; *Memorandum in Support of Sessel's Motion to Dismiss*, at 14). In so arguing, the two defendants rely on Illinois cases holding that demands for punitive damages must be supported by specific facts. *See Guice v. Sentinel Techs., Inc.*, 294 Ill.App.3d 97, 110, 689 N.E. 2d 355, 365 (1997); *Canel & Hale, Ltd. v. Tobin*, 304 Ill.App.3d 906, 920, 710 N.E.2d 861, 873 (1999); *Wait v. First Midwest Bank/Danville*, 142 Ill.App.3d 703, 710, 491 N.E.2d 795, 802 (1986). While Illinois substantive law may apply to the elements of the Trustee's cause of action, federal pleading rules – which require that a complaint only give notice of the plaintiff's claim and not that it spell out the facts underlying the claim – govern the manner in which those claims are pleaded. *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 863 (7th Cir. 2002). It is not necessary to plead sufficient facts to establish the legal elements of a claim. *Head v. Chicago School Reform Board of Trustees*, 225 F.3d 794, 801 (7th Cir. 2000). In this case, the Complaint states that the two defendants' conduct was malicious and purportedly geared toward destroying VisionTek. That is adequate to state a demand for punitive damages. *See Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 735 (7th Cir. 2004) (punitive damages are available under Illinois law upon

proof of actual malice); *Petty v. Chrysler Corp.,* 343 Ill.App.3d 815, 828, 799 N.E.2d

432, 443 (1st Dist. 2003) (court may award punitive damages if the defendant's tortious

acts are malicious or display reckless disregard for another's rights).


### D.  Personal Jurisdiction Over Sessel

Finally, Sessel argues that exercising personal jurisdiction over him would violate

his Fifth Amendment rights. (*Memorandum in Support of Sessel's Motion to Dismiss*, at

15). Actually, "argues" might be too strong a term because, shortly after he raised the

issue, he retreated from it in supplemental filing where he concedes that Seventh Circuit

authority holds otherwise. (*Supplement to the Memorandum in Support of Sessel's*

*Motion to Dismiss*, at 2). As Sessel acknowledges, the Seventh Circuit has held that, in

an adversary proceeding such as this one, the relevant constitutional inquiry is a Fifth

Amendment due process inquiry into minimum contacts with the United States as a

whole, not a Fourteenth Amendment inquiry into minimum contacts with the forum state.

*Diamond Mortgage Corp. v. Sugar*, 913 F.2d 1233, 1244 (7th Cir.1990). He also agrees

that, under such an inquiry, he is subject to personal jurisdiction in this case, and

recognizes that this court must follow Seventh Circuit authority. (*Supplement to the*

*Memorandum in Support of Sessel's Motion to Dismiss*, at 2). To the extent that Sessel

asks this court to ignore Seventh Circuit case law -- and it is not entirely clear he does --

the court declines such an invitation.

### III. Conclusion

For the foregoing reasons, the defendants' motions to dismiss Counts XXIII and XXVI of the Second Amended Complaint are denied.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: November 1, 2004.

Copies have been mailed to:

RICHARD G. SCHULTZ, Esq.
STEVEN H. GISTENSON, Esq.
JOHN L. CONLON, Esq.
BETHANY N. SCHOLS, Esq.
Schwartz, Cooper, Greenberger
  & Krauss, Chtd.
180 North LaSalle Street
Suite 2700
Chicago, IL 60601

JOHN T. SHAPIRO, Esq.
CATHERINE A. MILLER, Esq.
Freeborn & Peters, L.L.P.
311 South Wacker Drive
Suite 3000
Chicago, IL 60606

STEVEN C. SEEGER, Esq.
MICHAEL A. DUFFY, Esq.
BENJAMIN W. HULSE, Esq.
Kirkland & Ellis, L.L.P.
200 East Randolph Drive
Chicago, IL 60601

JOSEPH E. TIGHE, Esq.
Joseph E. Tighe, P.C.
111 West Washington Street
Suite 1100
Chicago, IL 60602

Attorneys for Plaintiff

Attorneys for Defendants