Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5454 | **DATE** | 11/1/2004 |
| **CASE TITLE** | Joseph E. Cohen vs. Ric Lewis, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendant MiTac International Corporation's motion to dismiss counts XVII and XXIII of the second amended complaint [89-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | NOV 3 2004 date docketed | |
| | Notified counsel by telephone. | | | 131 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/1/2004 date mailed notice | |
| IS | courtroom deputy's initials | 2004 NOV -2 PM 3:15 Date/time received in central Clerk's Office | IS mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH E. COHEN, Trustee for the Estate of VisionTek, LLC,** | ) ) ) | |
| Plaintiff, | ) ) ) | NOV 3 - 2004 |
| v. | ) ) | Case No. 03 C 5454 |
| **RIC LEWIS, ROBERT SHANE VANCE, SCOTT A. HERKELMAN, JOHN R. MALLEY, JOHN F. HALL, BFG TECHNOLOGIES, INC., ADVANCED EQUITIES, INC., KEITH G. DAUBENSPECK, DWIGHT O. BADGER, CHRISTOPHER R. PRAVECEK, JOHN SLEVIN, JOHN VOSICKY, NVIDIA CORPORATION, HILTON SESSEL, MITAC INTERNATIONAL CORP., and BARBARA LEWIS,** | ) ) ) ) ) ) ) ) ) ) ) ) ) | Magistrate Judge Martin C. Ashman |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of defendant MiTAC International Corporation ("MiTAC") to dismiss Counts XVII and XXIII of the Second Amended Complaint of plaintiff Joseph E. Cohen, Trustee for the Estate of VisionTek, LLC. For the following reasons, the court denies MiTAC's motion to dismiss those counts.

131

## I. Background

Prior to its Chapter VII bankruptcy proceedings[1], VisionTek manufactured and sold 3D computer graphics accelerators and memory modules – called "cards" – for the enhancement of graphics in computer games and personal computers. In August of 2002, several VisionTek employees left to either form, or work for, a new company, BFG Technologies, Inc. ("BFG"). In the seventy-page, twenty-seven-count Second Amended Complaint ("Complaint"), the Trustee characterizes the employees' actions as a mutiny against VisionTek, which involved the misappropriation of the company's trade secrets and confidential information. According to the Complaint, the mutinous employees solicited VisionTek's employees, suppliers, and customers, in order to form a new company to compete with VisionTek and run it out of business. The Trustee has named the former employees in counts charging breaches of those employees' non-competition agreements and confidentiality agreements.

Defendant MiTAC is a Taiwanese corporation that manufactures graphic cards and was a key supplier to VisionTek. MiTAC and VisionTek had a "Mutual Confidentiality Agreement" that covered the information that passed between them during their business relationship. According to the Trustee, MiTAC was an essential participant in the conspiracy: if MiTAC had not agreed to terminate its relationship with VisionTek and do

---

[1] The counts at issue here are non-core, adversary proceedings related to the Chapter VII bankruptcy case of *In the Matter of VisionTek*, No. 02 B 47006. (*Second Amended Complaint*, ¶ 3c).

business with the new company, BFG, the former VisionTek employees would not have carried out their plan. Thus, in Count XXIII, the Trustee alleges that MiTAC committed tortious interference with the contractual relationships VisionTek had with its soon-to-be-former employees. In addition, under Count XVII, the Trustee claims that MiTAC breached the "Mutual Confidentiality Agreement" by using VisionTek's confidential information to help launch the new company. MiTAC moves to dismiss these counts, arguing that the Trustee has unnecessarily involved it in a dispute between VisionTek and its former employees.

### A. Trustee's Allegations

For the purposes of considering the defendant's motion to dismiss, the court accepts all of the Trustee's well-pleaded allegations as true, and draw all reasonable inferences in the Trustee's favor. *Bressner v. Ambroziak*, 379 F.3d 478, 480 (7th Cir. 2004). Founded in 1988, VisionTek, as already noted, manufactured and distributed computer graphics cards for use in computer games and home computers. (*Complaint*, ¶ 23). As a participant in the highly competitive consumer electronics industry, VisionTek was understandably concerned with maintaining the confidentiality of its trade secrets and its design, development, and manufacturing methods. (*Id.*, ¶¶ 24-25). To that end, the contracts it executed with its employees included confidentiality and non-competition agreements. (*Id.*, ¶¶ 30-33, 36-38, 40, 42-44, 46-49). VisionTek also

executed a confidentiality agreement with one of its key suppliers, MiTAC. (*Id.*, ¶ 53). Pursuant to that "Mutual Confidentiality Agreement," dated February 1, 2002:

> [e]ach party agrees that as a condition to Confidential Information being furnished to the other, each party shall hold and maintain all Confidential Information in strict confidence. Furthermore, each party agrees not to disclose Confidential Information to any company, entity or person without the prior written consent of the other party for a period of three (3) years from the date hereof.

(*Id.*, ¶ 53, Ex. 14, at 1).

In 2002, VisionTek began discussions with Advanced Equities, Inc. ("AEI") regarding efforts to raise capital. (*Id.*, ¶ 57). The parties entered into a non-disclosure agreement to protect any confidential information that might be exchanged during the course of their discussions. (*Id.*, ¶ 58). By July of 2002, discussions had progressed to a point where the parties had raised the possibility of AEI purchasing some or all of VisionTek's outstanding shares, and AEI conducted a due diligence examination of VisionTek. (*Id.*, ¶ 60-61). On August 5, 2002, three VisionTek representatives – Ric Lewis, Robert Vance, and Scott Herkelman – met with AEI representatives – Keith Daubenspek, Dwight Badger, Christopher Pravecek, John Slevin, and John Vosicky – to negotiate AEI's purchase of VisionTek. (*Id.*, ¶ 64). In these negotiations, the VisionTek representatives sought to secure positions and ownership interests in the successor company for themselves, but their demands were rejected. (*Id.*, ¶ 64).

Meanwhile, according to the Trustee, the three VisionTek employees were planning a mutiny. The Trustee alleges that the same eight individuals engaging in the

VisionTek-AEI negotiations, and perhaps others, were also engaging in clandestine discussions regarding the formation of a new company that would include many of VisionTek's employees. (*Id.*, ¶ 65). To that end, the eight individuals sought to delay or derail the VisionTek-AEI negotiations until their plan could come to fruition. (*Id.*, ¶ 65). During these discussions, these individuals "reviewed and utilized [VisionTek's] confidential information," which they had accumulated during the employees' tenures with VisionTek or during the AEI-VisionTek negotiations, in order to analyze and evaluate the feasibility of creating a new company. (*Id.*, ¶ 66). Pursuant to their plan, the new company would solicit VisionTek's employees, customers, and suppliers, taking over VisionTek's business and eventually driving it from the market. (*Id.*, ¶ 67). In order for the scheme to succeed, however, the mutinying VisionTek employees would have to solicit and convince certain key suppliers to cooperate by severing their business relationships with VisionTek in favor of the newly formed company. (*Id.*, ¶¶ 68, 88).

As already noted, MiTAC was one of those key suppliers. The Trustee claims that MiTAC met with Slevin, Vosicky, Daubenspek, Badger, Pravecek, Lewis, Vance, and Herkelman, and agreed to cooperate with the scheme, support the new company, and cease doing business with VisionTek. (*Id.*, ¶ 70). According to the Trustee, this was of vital importance to the success of the plan: it could not succeed without MiTAC's participation. (*Id.*, ¶ 70). As a part of the scheme, the Trustee also claims that MiTAC transferred VisionTek's confidential information to Slevin, Vosicky, Daubenspek,

Badger, Pravecek, Lewis, Vance, and Herkelman. (*Id.*, ¶ 71). The Trustee further alleges that, on August 5, 2002, the VisionTek mutineers – Lewis, Vance, and Herkelman – had a conference call with MiTAC's liaison officer, Anson Chen, at the VisionTek offices. (*Id.*, ¶ 72). Their five AEI cohorts also participated, and the topic of the discussions was the plan to form a new company, which MiTAC would supply, and which would run VisionTek out of business. (*Id.*, at ¶ 72). Pursuant to the plan, MiTAC agreed to create excess inventory, beyond VisionTek's requirements, for the purpose of supplying the new company. (*Id.*, ¶ 81). Lewis identified those VisionTek employees who would be participating in the new company by transferring an organizational chart to Chen. (*Id.*, ¶ 73).

On August 13, 2002, Herkelman wrote to Chen regarding a meeting that would take place in Taiwan sometime before September 15, 2002. (*Id.*, ¶ 79). The next day, August 14, the three VisionTek employees involved in the original discussions with AEI – Lewis, Vance, and Herkelman – abruptly resigned from VisionTek, but not before pirating away certain confidential files and business plans. (*Id.*, ¶ 75, 82-83). By August 23, 2002, the three VisionTek mutineers solicited some additional employees – among them, John Malley and John Hall, now defendants in this lawsuit – to leave VisionTek as well. (*Id.*, ¶ 85-86). On August 27, 2002, the new company, BFG, was incorporated. (*Id.*, ¶ 84). That same day, according to the Trustee, Herkelman and

Vosicky traveled to Taiwan to meet with MiTAC to discuss supplying the new company. (*Id.*, ¶ 79). In addition, the trustee alleges that:

> Lewis, Vance, Herkelman, Malley, Hall, Slevin, Vosicky, Daubenspek, Badger, Pravecek, and AEI . . . solicited suppliers of [VisionTek] to stop doing business with [VisionTek] and to do business with BFG. The suppliers that were solicited included: . . . MiTAC . . .

(*Id.*, ¶ 88).

As already noted, the Trustee names MiTAC in two of his Complaint's twenty-seven counts. In Count XVII, the Trustee alleges that MiTAC breached the Mutual Confidentiality Agreement by disclosing and using VisionTek's confidential information. (*Id.*, ¶ 92). The Trustee also alleges, under Count XXIII, that MiTAC is liable for tortious interference with contractual relationships. According to the Trustee, MiTAC was aware of the various confidentiality and non-competition agreements VisionTek had with the employees that left it to form and work for BFG. (*Id.*, ¶¶ 91-92). The Trustee claims that, nevertheless, MiTAC intentionally, and without justification, induced those employees to breach those agreements. (*Id.*, ¶ 93).

### B. Defendant's Arguments

MiTAC moves to dismiss both counts. It argues that Count XVII fails to state a claim for breach of the Mutual Confidentiality Agreement because it fails to allege that MiTAC shared any confidential information with any individuals who did not already know that information. In addition, MiTAC argues that the trustee's allegations do not

establish the requisite material and substantial causal link between MiTAC's alleged misconduct and VisionTek's damages. As for Count XXIII, MiTAC contends that the trustee has failed to state a claim for tortious interference with contractual relationships because the Complaint alleges that VisionTek's employees formulated the plan to found BFG and solicited MiTAC to do business with the new company. According to MiTAC, the Trustee complains of nothing more than MiTAC ending one business relationship with VisionTek, and commencing another with BFG.

## II. Analysis

Under the Federal Rules' simplified standard for pleading, "'[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998 (2002) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Claims lacking merit may be dealt with through summary judgment under Rule 56. *Swierkiewicz*, 534 U.S. at 514, 122 S.Ct. at 998-99.

On the other hand, the court is not obligated under these liberal pleading standards to disregard factual allegations that undermine a plaintiff's claim. *Pugel v. Board of Trustees of University of Illinois*, 378 F.3d 659, 665 (7th Cir. 2004). When the plaintiff

pleads itself out of court – that is, admits all the ingredients of an impenetrable defense – a complaint that otherwise states a claim may be dismissed under Rule 12(b)(6). *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). In this case, while the Trustee has come very close to doing just that, the court is constrained to allow Counts XVII and XXIII of the Complaint to stand and deny MiTAC's motion to dismiss.

### A. Breach of Confidentiality Agreement

In Count XVII of the Complaint, the Trustee claims that MiTAC breached the Mutual Confidentiality Agreement it had with VisionTek by divulging confidential information to Slevin, Vosicky, Daubenspek, Badger, Pravecek, Lewis, Vance, and Herkelman. (*Complaint*, ¶¶ 71, 91-92). MiTAC moves to dismiss this count, arguing that, based on both the terms of the agreement and the Trustee's own allegations, the Trustee could prove no set of facts that would entitle him to relief on this claim. (*Memorandum of Law in Support of MiTAC's Motion to Dismiss*, at 5-8). As MiTAC submits, Section 4 of the Mutual Confidentiality Agreement included at least two exceptions to the restrictions on the disclosure of confidential information:

> 4. <u>Restrictions</u> Notwithstanding the forgoing, each party shall not be restricted in its use or disclosure of Confidential Information to the extent that any such information:
>
>      \*  \*  \*
>
>  b. was known to the receiving party at the time of its disclosure to the receiving party;

> c. is publicly known or hereinafter becomes public knowledge without the breach of the restrictions contained in this agreement.

(*Complaint*, Ex. 14, ¶ 4). MiTAC argues that the Trustee cannot maintain this claim because those individuals already had the supposedly confidential information. In so arguing, MiTAC points to the Trustee's own allegations. According to the Complaint, Lewis, Vance, and Herkelman were all upper-level employees of VisionTek (*Id.*, ¶¶ 29-40), and had access to and were intimately familiar with all types of VisionTek's confidential information. (*Id.*, ¶ 48, 80, 82). In addition, Pravecek and Vosicky had access to certain kinds of VisionTek's confidential information through their employment with AEI. (*Id.*, ¶ 58, 61). And, the entire group of plotting VisionTek and AEI employees exchanged whatever information they had during their discussions regarding the formation of the new company. (*Id.*, ¶ 66-67). As MiTAC would have it, any confidential information it might have had would have fallen under the exceptions in Section 4 of the Mutual Confidentiality Agreement and, as a result, it could not have breached that agreement by disclosing that information.

The parties briefly dispute the interpretation of Section 4(b) to the information at issue. Section 4(b) refers to information already know to the receiving party. MiTAC interprets "receiving party" to mean a party outside the Mutual Confidentiality Agreement, such as the mutinous VisionTek employees or their AEI cohorts. The Trustee maintains that the phrase "receiving party" must mean either VisionTek or MiTAC, as

they are the "parties receiving" confidential information under the agreement. The agreement refers to MiTAC and VisionTek as "parties" throughout, and distinguishes them from "third parties" or other "companies, entities, or persons" elsewhere in the text. Given the terms of the agreement, the Trustee's interpretation is more convincing. The Trustee does not dispute, however, that Section 4(c)'s exception for information "publicly known" would be applicable to the information used and exchanged by the VisionTek and AEI employees in their plotting sessions. Indeed, based on the Trustee's allegations, it would appear that this information might no longer be considered confidential. The court need not reach an ultimate resolution of these interpretation questions, however, because it finds the Trustee's claim may stand under Section 4(c) and under either interpretation of Section 4(b).

As already noted, it is entirely possible that a litigant may plead too many facts and plead himself out of court. The Trustee has tread dangerously close to that here. The only factor that makes the court reluctant to dismiss this count is the unknown nature of the information the various players in this purported scheme "brought to the table." It may well be that MiTAC had a very different package of VisionTek information to add to that which the VisionTek and AEI employees already wielded. If that is the case, the information MiTAC allegedly supplied would not fall under the Section 4 exceptions, including the interpretation of Section 4(b) urged by MiTAC. The information would neither be known to the receiving party nor publicly known. This, then, would be a set of

facts, consistent with the allegations of the complaint, that the Trustee could prove that might entitle him to relief. Accordingly, dismissal of Count XVII would be inappropriate.

MiTAC also argues that Count XVII must be dismissed because the Trustee cannot prove that MiTAC's conduct caused any of VisionTek's injuries. According to MiTAC, any damages VisionTek suffered were due to the acts of the VisionTek employees and their AEI cohorts. (*Memorandum of Law in Support of MiTAC's Motion to Dismiss*, at 8-9). This argument, however, presupposes that the Trustee will be unable to prove his tortious interference claim, and is based entirely on cases dealing with the proof required to establish a claim, as opposed to the allegations necessary to withstand a motion to dismiss. *Martin v. Heinold Commodities, Inc.*, 163 Ill.2d 33, 58, 643 N.E.2d 734, 746 (1994) (summary judgment); *First Springfield Bank & Trust v. Galman*, 188 Ill.2d 252, 256, 720 N.E.2d 1068, 1071 (1999) (jury verdict); *Filipetto v. Village of Wilmette*, 135 Ill.App.3d 781, 784, 482 N.E.2d 358, 360 (1st Dist. 1985) (summary judgment). As MiTAC has chosen to attack the Trustee's case with a motion to dismiss, the trustee need not prove anything at this point in the proceedings. For now, the court must allow Count XVII to stand.

## B. Tortious Interference with Contractual Relations

Under Count XXIII, the Trustee alleges that MiTAC committed tortious interference with the contractual relations VisionTek had with its employees. Under Illinois law, the elements of a claim for tortious interference with contractual relations are: (1) a valid and enforceable contract; (2) defendant's awareness of the contractual obligation; (3) defendant's intentional and unjustified inducement of the breach of that contractual obligation; (4) subsequent breach caused by defendant's unlawful conduct; and (5) resultant damages. *Burrell v. City of Mattoon,* 378 F.3d 642, 651-52 (7th Cir. 2004); *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 154-55, 545 N.E.2d 672, 676 (1989). MiTAC moves for dismissal of this count, arguing that the Trustee's allegations show that MiTAC did not intentionally and unjustifiedly induce the VisionTek employees to breach their contracts. (*Memorandum of Law in Support of MiTAC's Motion to Dismiss*, at 10-13). Instead, MiTAC argues, those allegations state that the VisionTek employees solicited MiTAC's participation in their plan and MiTAC did nothing more than agree to do business with the soon-to-be-formed BFG.

As MiTAC submits, a necessary prerequisite to the maintenance of an action for tortious interference with contract is a defendant's intentional and unjustified inducement of a breach of contract. *Strosberg v. Brauvin Realty Services, Inc.*, 295 Ill.App.3d 17, 33, 691 N.E.2d 834, 845 (1st Dist. 1998). In the context of a claim for tortious interference

with a contract, "inducement" means "some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way." *In re Estate of Albergo*, 275 Ill.App.3d 439, 446, 656 N.E.2d 97, 103 (2nd Dist. 1995) (citations omitted). Under Count XXIII of the Complaint, the Trustee specifically alleges that MiTAC "intentionally, and without justification, induced a breach of each of" the VisionTek employees' contracts. (*Complaint*, ¶ 93). According to MiTAC, however, the balance of the Trustee's allegations undermines this claim to the extent that the Trustee has pleaded himself out of court.

The Trustee submits that his allegations properly plead a claim for tortious interference with contract. The complaint alleges that MiTAC was aware of the VisionTek employees' contract but, nevertheless, met with those individuals and agreed to participate in a plan with them in which MiTAC would abandon VisionTek in favor of doing business with the newly formed BFG. (*Complaint*, ¶¶ 70, 92). According to the Complaint, the VisionTek employees would not breach their contracts without MiTAC's participation: MiTAC was critical to the formation of BFG. (*Id.*, ¶ 70). MiTAC and the mutinous VisionTek employees allegedly shared confidential information gained from VisionTek in furtherance of the plan. (*Id.*, ¶ 71, 73). The Trustee maintains that, while these allegations may not state that MiTAC devised the plan, they do state that the plan could not have been carried out without MiTAC: the plan required MiTAC's inventory, MiTAC's confidential information, and MiTAC's active participation. These elements,

according to the Trustee, induced the employees to abandon their agreements with VisionTek.

The court finds that the Trustee's allegations go beyond depicting MiTAC's role in the VisionTek employees' breach of their contracts as strictly passive – but only slightly. In so finding, the court must adhere to the Federal Rules' liberal pleading standards. Given the Trustees allegations, he may be able to prove that MiTAC engaged in some form of active persuasion or encouragement of the VisionTek employees' breach during one of the meetings in which MiTAC allegedly participated. *See Albergo*, 275 Ill.App.3d at 446, 656 N.E.2d at 103. As MiTAC points out, however, such proof will have to amount to more than MiTAC's mere knowledge that its conduct was "substantially certain to result in [the VisionTek employees] breaking [their] contract with [VisionTek]." *R.E. Davis Chemical Corp. v. Diasonics, Inc.*, 826 F.2d 678, 687 (7th Cir. 1987), *modified on other grounds*, 924 F.2d 709 (7th Cir. 1991). It will also have to amount to more than a showing that MiTAC merely created a condition that opened the way for the VisionTek employees to breach their contracts. *Servpro Industries, Inc. v. Schmidt*, No. 94 C 5866, 1997 WL 158316, *16 (N.D.Ill. Mar. 31, 1997). Finally, such proof will have to go beyond demonstrating that MiTAC merely entered into an agreement with the VisionTek employees with the knowledge that they could not perform both that agreement and their agreements with VisionTek. *In re Douglass Dunhill, Inc.*, 22 B.R. 953, 957 (Bankr. N.D. Ill. 1982). Because the Trustee might conceivably be able

to provide such proof in a manner consistent with his allegations, the court cannot dismiss the Complaint.[2]

### III. Conclusion

The Trustee has adequately alleged the bare minimum necessary for his Complaint to pass muster under the liberal pleading standards of the Federal Rules. While he has certainly flirted with alleging facts that would plead him out of court, he has not quite crossed that line. Proving these claims will be another matter, as the Trustee all but concedes, quoting *Swierkiewicz* for the proposition that a complaint cannot be dismissed merely because "it may appear on the face of the pleadings that a recovery is very remote . . ." 534 U.S. at 515, 122 S.Ct. at 999. (*Plaintiff's Memorandum of Law in Opposition to MiTAC's Motion to Dismiss*, at 7). For now, however, the court must deny MiTAC's motion to dismiss and allow Counts XVII and XXIII to stand.

---

[2] MiTAC also briefly argues that the Trustee's demand for punitive damages is deficient. (*Memorandum of Law in Support of MiTAC's Motion to Dismiss*, at 10 n.5). The Trustee alleges that MiTAC's conduct was malicious and purportedly geared toward destroying VisionTek. That is adequate, at this stage in the proceedings, to state a demand for punitive damages. *See Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 735 (7th Cir. 2004) (punitive damages are available under Illinois law upon proof of actual malice); *Petty v. Chrysler Corp.*, 343 Ill.App.3d 815, 828, 799 N.E.2d 432, 443 (1st Dist. 2003) (court may award punitive damages if the defendant's tortious acts are malicious or display reckless disregard for another's rights). While Illinois substantive law may apply to the elements of the Trustee's cause of action, federal pleading rules – which require that a complaint only give notice of the plaintiff's claim and not that it spell out the facts underlying the claim – govern the manner in which those claims are pleaded. *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 863 (7th Cir. 2002). It is not necessary to plead sufficient facts to establish the legal elements of a claim. *Head v. Chicago School Reform Board of Trustees*, 225 F.3d 794, 801 (7th Cir. 2000); *cf. Guice v. Sentinel Techs., Inc.*, 294 Ill.App.3d 97, 110, 689 N.E. 2d 355, 365 (1997).

For the foregoing reasons, the defendant's motion to dismiss Counts XVII and XXIII of the Second Amended complaint is denied.

**ENTER ORDER:**

_/s/ Martin C. Ashman_
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: November 1, 2004.

Copies have been mailed to:

| | |
|---|---|
| RICHARD G. SCHULTZ, Esq.<br>STEVEN H. GISTENSON, Esq.<br>JOHN L. CONLON, Esq.<br>BETHANY N. SCHOLS, Esq.<br>Schwartz, Cooper, Greenberger<br>  & Krauss, Chtd.<br>180 North LaSalle Street<br>Suite 2700<br>Chicago, IL  60601 | JOHN T. SHAPIRO, Esq.<br>CATHERINE A. MILLER, Esq.<br>Freeborn & Peters, L.L.P.<br>311 South Wacker Drive<br>Suite 3000<br>Chicago, IL  60606<br><br>STEVEN C. SEEGER, Esq.<br>MICHAEL A. DUFFY, Esq.<br>BENJAMIN W. HULSE, Esq.<br>Kirkland & Ellis, L.L.P.<br>200 East Randolph Drive<br>Chicago, IL  60601<br><br>JOSEPH E. TIGHE, Esq.<br>Joseph E. Tighe, P.C.<br>111 West Washington Street<br>Suite 1100<br>Chicago, IL  60602 |
| Attorneys for Plaintiff | Attorneys for Defendants |